United States District Court
Southern District of Texas
**ENTERED**
June 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:21-CR-204 |
| | § | |
| LEE RAY BOYKIN JR. | § | |

**MEMORANDUM OPINION AND ORDER**

In this criminal proceeding, the defendant, Lee Ray Boykin Jr. ("Boykin"), has filed a motion requesting an evaluation of his competency to stand trial. The Court has held an evidentiary hearing on Boykin's motion. (Dkt. 49). Based on the evidence presented at the hearing and the rest of the record, including the Court's own observations, the Court concludes that there are no active concerns about Boykin's competency. Boykin's motion (Dkt. 46) is **DENIED**.

**I.     BACKGROUND**

The Government alleges that Boykin, a former Texas state trooper, sexually assaulted two women while he was on duty. (Dkt. 8). According to the Government, Boykin lured the two women into his marked cruiser on false pretenses after traffic stops and drove them to remote locations, where he forced them to perform oral sex on him. (Dkt. 8). Boykin has been indicted on five federal counts, including two counts of deprivation of rights under color of law;[1] two counts of destruction, alteration, or falsification of records in federal investigations;[2] and one count of carry and use of a

---
[1] *See* 18 U.S.C. § 242.
[2] *See* 18 U.S.C. § 1519.

firearm in a crime of violence.³ (Dkt. 50). Boykin has also been indicted in Texas state court for aggravated sexual assault for his alleged actions. (Dkt. 47-1 at p. 56). *See* Harris County criminal case number 1685312.

In April of 2021, Magistrate Judge Sheldon ordered Boykin detained pending trial. (Dkt. 13). Boykin filed this motion a year later, on April 4, 2022. (Dkt. 46). Although Boykin styled the motion as "agreed," the Government vigorously opposes it and characterizes it as "a tactic [by Boykin] to avoid accountability for his heinous crimes by unnecessarily delaying his trial." (Dkt. 46 at p. 1; Dkt. 47 at p. 1).

## II.    THE LEGAL STANDARD

Under 18 U.S.C. § 4241(a) ("Section 4241"), court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Courts in the Fifth Circuit consider three factors when determining whether a competency hearing is required: "(1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *United States v. Ruston*, 565 F.3d 892, 902 (5th Cir. 2009). "There is no specific threshold or quantum of evidence that requires the district court to order a competency hearing." *United States v. Mitchell*, 709 F.3d 436, 440 (5th Cir. 2013) (quotation marks omitted).

---

³ *See* 18 U.S.C. § 924(c)(1)(A).

The standard for determining whether a competency hearing is necessary is intertwined with the standard for determining whether the defendant is competent. The Supreme Court interpreted an earlier version of Section 4241 (which was then codified at 18 U.S.C. § 4244) in *Dusky v. United States*, 362 U.S. 402, 402–03 (1960), creating what is commonly called the "*Dusky* standard" for evaluating a defendant's competency to stand trial. Under the *Dusky* standard, "[a] defendant is deemed mentally competent when he has the present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceeding against him." *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998) (quotation marks and brackets omitted) (citing *Dusky* and *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980)). "A district court can consider several factors in evaluating competency [under the *Dusky* standard], including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant." *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011).

The language interpreted by the *Dusky* Court was materially identical to the language of the current version of Section 4241. *Compare* 18 U.S.C. § 4241 *with* Act Sept. 7, 1949, ch. 535, §1, 63 Stat. 686.[4] Essentially, Section 4241 requires a competency

---

[4] The language of the earlier version of Section 4241 can be found at the following URL: https://uscode.house.gov/statviewer.htm?volume=63&page=686. The earlier version required a competency hearing if there was "reasonable cause to believe that [the defendant] may [have been] presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense[.]" Act Sept. 7, 1949, ch. 535, §1, 63 Stat. 686.

hearing if there is reasonable cause to believe that the defendant is incompetent under the *Dusky* standard. As a corollary, if there is no reasonable cause to believe that the defendant is incompetent under the *Dusky* standard, then the Court need not hold a competency hearing simply because the defendant has requested one. *See, e.g., United States v. Garcia*, 674 Fed. App'x 351, 353 (5th Cir. 2016) ("Garcia offered no proof of previous irrational behavior on his part; and, based on his demeanor and responses during the hearing on his motion, the court could reasonably determine there were no active competency concerns. Moreover, Garcia's colloquy with the court reflected his understanding of the nature and consequences of the proceedings against him and his ability to assist counsel in his own defense.") (citations omitted); *see also United States v. Flores-Martinez*, 677 F.3d 699, 707 (5th Cir. 2012) ("[W]e have explicitly recognized that due process does not mandate a full-blown hearing every time there is the slimmest evidence of incompetency.") (quotation marks omitted).

### III. THE EVIDENCE

As previously mentioned, courts in the Fifth Circuit consider three factors when determining whether a competency hearing is required: "(1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *Ruston*, 565 F.3d at 902. Boykin has not presented evidence showing a history of irrational behavior, nor has he provided any medical opinions discussing his competency. As for the remaining factor, the Court has observed nothing about Boykin's courtroom demeanor suggesting that he either lacks the present ability to consult with his lawyer with a reasonable degree of rational understanding or lacks a rational as well as

factual understanding of the proceeding against him. *Cf. United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002) ("Applying this rule in [*United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995)], we concluded that a defendant's ingesting 50 anti-depressant pills in a suicide attempt during the course of trial, without a previous history of irrational behavior or a medical opinion suggesting incompetence, was insufficiently manifest to make the trial court's failure to sua sponte order a mental competency exam an abuse of discretion."). To the contrary, the evidence in the record and the Court's own observations point only to the conclusion that Boykin is competent under the *Dusky* standard.

> **a. There is no evidence that Boykin suffers from post-traumatic stress disorder or any other mental health condition.**

Boykin requests a competency hearing based on his unsupported claim that he suffers from post-traumatic stress disorder ("PTSD"). Boykin, an Army veteran, claims in his motion that he "served on the front lines in Afghanistan[,]" where he "was directly involved in the rescue and retrieval of hundreds of civilians, some of whom had been killed." (Dkt. 46 at p. 2). Boykin's motion further states that, "[s]ince his return, [Boykin] has exhibited symptoms of post-traumatic stress disorder, sleeplessness, and anxiety, among other things." (Dkt. 46 at p. 2).

Those statements might be compelling, if they were true. But Boykin's characterization of his military service is unsworn; uncorroborated; and, as the Government points out, directly contradicted by Boykin's own military service records. Boykin's service records reflect that, in his only deployment, Boykin spent three and a

half months in Afghanistan serving as a military police officer. (Dkt. 47-1 at pp. 1, 46). In two post-deployment health assessments, Boykin specifically denied ever having felt like he was in great danger of being killed, having encountered dead bodies, having seen people killed or wounded, or having engaged in combat where he discharged a weapon:

> 4. **During your deployment:**
>    a. Did you ever feel like you were in great danger of being killed?     ○ Yes   ⦿ No
>    b. Did you encounter dead bodies or see people killed or wounded during this deployment?     ○ Yes   ⦿ No
>    c. Did you engage in direct combat where you discharged a weapon?     ○ Yes   ⦿ No

Dkt. 47-1 at pp. 10, 20.

Moreover, there is no record showing that Boykin has ever told a medical provider that he was experiencing the symptoms which he now claims to suffer. Instead, the record only contains instances in which Boykin denied experiencing those symptoms and denied receiving treatment for those symptoms. For example, in the two previously mentioned post-deployment health assessments, Boykin specifically denied having trouble sleeping or suffering from anxiety:

| | Symptom | Not bothered at all | Bothered a little | Bothered a lot |
|---|---|---|---|---|
| a. | Stomach pain | ⦿ | ○ | ○ |
| b. | Back pain | ⦿ | ○ | ○ |
| c. | Pain in the arms, legs, or joints (knees, hips, etc.) | ⦿ | ○ | ○ |
| d. | Menstrual cramps or other problems with your periods (Women only) | ○ | ○ | ○ |
| e. | Headaches | ⦿ | ○ | ○ |
| f. | Chest pain | ⦿ | ○ | ○ |
| g. | Dizziness | ⦿ | ○ | ○ |
| h. | Fainting spells | ⦿ | ○ | ○ |
| i. | Feeling your heart pound or race | ⦿ | ○ | ○ |
| j. | Shortness of breath | ⦿ | ○ | ○ |
| k. | Pain or problems during sexual intercourse | ⦿ | ○ | ○ |
| l. | Constipation, loose bowels, or diarrhea | ⦿ | ○ | ○ |
| m. | Nausea, gas, or indigestion | ⦿ | ○ | ○ |
| n. | Feeling tired or having low energy | ⦿ | ○ | ○ |
| o. | Trouble sleeping | ⦿ | ○ | ○ |
| p. | Trouble concentrating on things (such as reading a newspaper or watching television) | ⦿ | ○ | ○ |
| q. | Memory problems | ⦿ | ○ | ○ |

> 13. **Have you ever had any experience that was so frightening, horrible, or upsetting that, in the PAST MONTH, you:**
>    a. Have had nightmares about it or thought about it when you did not want to?     ○ Yes   ⦿ No
>    b. Tried hard not to think about it or went out of your way to avoid situations that remind you of it?     ○ Yes   ⦿ No
>    c. Were constantly on guard, watchful or easily startled?     ○ Yes   ⦿ No
>    d. Felt numb or detached from others, activities, or your surroundings?     ○ Yes   ⦿ No

Dkt. 47-1 at pp. 11, 20, 21.

During the post-deployment health assessments, Boykin also denied receiving treatment for combat stress or for "any mental health condition or concern such as, but not limited to post traumatic stress disorder[.]" (Dkt. 47-1 at pp. 10, 21). Boykin's answers on the post-deployment health assessments were consistent with the answers that he later gave to similar questions on subsequent health assessments—he repeatedly denied having or being treated for any mental health concerns (including PTSD) or sleep problems. (Dkt. 47-1 at pp. 34, 35, 38, 39, 47, 48, 49). Boykin's answers on all of these assessments were screened by medical providers as part of the evaluations, and none of the providers found cause to refer Boykin for treatment of any mental health issue. (Dkt. 47-1 at pp. 15–18, 25–28, 35–37, 43, 50–53). Boykin also underwent a psychological examination when he applied to become a Texas state trooper, and the examining psychologist expressed no concerns and deemed Boykin fit to serve. (Dkt. 47-1 at p. 44).

In short, despite having undergone multiple medical assessments over the years since his deployment to Afghanistan, Boykin can provide absolutely no documentation demonstrating that he has ever shown, or even ever claimed to show, any sign whatsoever that he suffers from PTSD or any other mental health condition. Apart from his own unsworn and uncorroborated statements, the only support that Boykin provides for his claim that he has PTSD is a vague description of statements allegedly made by his wife to his attorneys. Boykin's motion indicates that his attorneys have discussed their "observations" as to Boykin's "cognitive state" with his wife, who has "shared major occurrences and/or instances that could have traumatically impacted Mr. Boykin's state

of mind." (Dkt. 46 at p. 2). Boykin's wife's statements are equivocal and are not sworn, corroborated, or even effectively summarized; and they seem to contradict an earlier statement to the United States Probation Office in which Boykin's wife said that "she [wa]s not aware of any mental health issues" suffered by Boykin. (Dkt. 47-1 at p. 56). By all indications in the record, Boykin is simply claiming to have PTSD to delay his trial.

> b. **Even assuming that Boykin suffers from post-traumatic stress disorder or another mental health condition, the evidence shows that he is competent under the *Dusky* standard.**

But assume that Boykin actually has PTSD. That alone is still not enough, as "the mere fact of a mental diagnosis does not mandate a competency hearing under 18 U.S.C. § 4241(a)." *Garcia*, 674 Fed. App'x at 353; *see also Mitchell*, 709 F.3d at 440 ("Significantly, the presence or absence of mental illness or brain disorder is not dispositive as to competency.") (quotation marks omitted). "What is more to the point is whether [Boykin's] disorder render[s] him unable to understand the proceedings against him or to assist in his own defense." *Bouchillon v. Collins*, 907 F.2d 589, 592–93 (5th Cir. 1990). Here, ample evidence shows that Boykin has both a profound understanding of these proceedings and can assist in his own defense. There is no evidence showing otherwise.

One compelling piece of evidence of Boykin's competence is his behavior during his military involuntary separation proceedings, in which Boykin consulted with appointed counsel and opted to resign in hopes of being granted leniency. After Boykin's arrest and indictment, the Department of the Army informed Boykin, an Army reservist, that it was commencing involuntary separation proceedings and that Boykin possibly

stood to be involuntarily separated from the Army "under other than honorable conditions" unless he could show cause why he should be retained. (Dkt. 47-1 at pp. 64–66). The Department sent the notice by certified mail and gave Boykin 15 days from the date of receipt to either submit his resignation, transfer to the Retired Reserve, or have his case acted on by a withdrawal board. (Dkt. 47-1 at pp. 65, 68). If Boykin elected to go to the withdrawal board, the recommended characterization of Boykin's service would be "other than honorable[.]" (Dkt. 47-1 at p. 65). The Department also gave Boykin the option of being represented by appointed counsel. (Dkt. 47-1 at p. 66).

In his response to the Department's notice, Boykin signed an acknowledgement of receipt. (Dkt. 47-1 at p. 68). However, he handwrote on the acknowledgement that he "was never personally served the certified mail due to incarceration, and the mail was not signed for." (Dkt. 47-1 at p. 68). The handwritten explanation can only be described as a shrewd move, considering that Boykin had a 15-day response deadline and that his acknowledgement was dated August 21, 2021, nearly two months after the June 25, 2021 date printed on the Department's notice. (Dkt. 47-1 at pp. 64, 68). Boykin then elected to be represented by a member of the Army's Judge Advocate General's Corps and to submit a resignation instead of having his case acted on by a withdrawal board. (Dkt. 47-1 at p. 67). In his resignation letter, Boykin stated that he had consulted with his appointed counsel and that he hoped to receive either a "certificate of honorable discharge" or a "general characterization of separation" because he had opted to resign. (Dkt. 47-1 at p. 69).

Boykin was also sued in a civil action by one of his alleged victims. (Dkt. 47-1 at pp. 70–76). The alleged victim's counsel sent a letter to Boykin offering to settle with him; the letter demanded a response "on or before Feb. 28, 2022." (Dkt. 47-1 at p. 76). When he received the demand letter, Boykin wrote a letter to the alleged victim's counsel requesting an extension of the response deadline "to afford [Boykin] the opportunity to seek and find legal counsel." (Dkt. 47-1 at p. 77).

Finally, Boykin's communications with his family regarding his criminal charges similarly indicate a firm grasp of the proceedings against him and an ability to assist in his own defense. To take a few examples, when discussing one of his alleged victims with his wife, Boykin accurately stated that he had been arrested by Texas state authorities on a charge of aggravated sexual assault and insisted to his wife that the sexual encounter was consensual. (Dkt. 47-1 at pp. 61–62). In an email to his father, Boykin said that he "received legal mail" that "need[ed] a reply by 28 feb" and asked his father to "ask our team if they are aware of it[.]" (Dkt. 47-1 at p. 85). In another email to his father, Boykin said that his attorneys had missed a scheduled meeting with him the previous day but that "it [wa]s okay they did not show up" because the attorneys "[we]re looking into every aspect of the situation so we are not moving too quickly at the last minute missing details." (Dkt. 47-1 at p. 86). When discussing a reverse proffer meeting with his father, Boykin explained that "it's like something where we go in and hear what the prosecution has."[5] (Dkt. 47-1 at p. 80). Boykin also explained that he was attending

---

[5] Boykin's description of a reverse proffer to his father is consistent with the common understanding of the term as "a session in which the prosecutor describes the evidence and

the reverse proffer meeting at his counsel's request, that his wife would also be there, and that "[i]t's literally them just talking about what they have and what they can go what they actually have proof of." (Dkt. 47-1 at p. 80). When describing plea negotiations to his wife, Boykin told her that "nothing's changed as far as [the prosecution's] offer" and that "the numbers haven't changed[.]" (Dkt. 47-1 at pp. 83–84). Boykin added that the prosecution was "trying to put [him] away for the rest of [his] life basically" but that he had "brought some things to light" in discussions with his attorneys that he hoped would present things "from another perspective." (Dkt. 47-1 at pp. 83–84). Ultimately, Boykin gave a rational summary of where the negotiations stood: "I mean the numbers haven't changed but just trying to see where we can get what we can work with, you know." (Dkt. 47-1 at p. 84).

---

potential charges against a defendant while the defendant and his attorney listen to the information set forth by the prosecutor." *United States v. Hinojosa*, No. 3:16-CR-536, 2020 WL 905357, at *2 n.2 (N.D. Tex. Feb. 25, 2020).

The record plainly shows that Boykin understands the nature and consequences of the proceedings against him and is able to assist counsel in his own defense. There is no reasonable cause to believe that Boykin is incompetent under the *Dusky* standard. Under these circumstances, the Court will not grant Boykin's request to hold a competency hearing. *See Garcia*, 674 Fed. App'x at 353. Boykin's motion requesting an evaluation of his competency to stand trial (Dkt. 46) is **DENIED**.

SIGNED at Houston, Texas on June 15, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE